# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARGARET GUILE,                )
                               )
        Plaintiff,             )
                               )
        v.                     )    1:15cv1069
                               )
DURHAM NEPHROLOGY ASSOCIATES,  )
et al.,                        )
                               )
        Defendants.            )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge on the Application for Leave to Proceed In Forma Pauperis (the "Application") (Docket Entry 1) filed by Margaret Guile in conjunction with her pro se Complaint (Docket Entry 2) against Amarnath Kathresal, Janice Mooney, Janice Walters, Charles Cooperberg (collectively, the "Individual Defendants"), and Durham Nephrology Associates (the "Practice," and collectively with the Individual Defendants, the "Defendants"). The undersigned will grant the Application for the limited purpose of recommending dismissal of this action.

## APPLICABLE LEGAL PRINCIPLES

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the

costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [i]s not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A plaintiff "fails to state a claim on which relief may be granted," id., when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.[1]

Furthermore, federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998). As such, no presumption of jurisdiction applies, Pinkley, Inc. v. City of Frederick, Md., 191 F.3d 394, 399 (4th Cir. 1999); instead, federal courts must determine if a valid jurisdictional basis exists and "dismiss the action if no such ground appears," Bulldog Trucking, 147 F.3d at 352; see also Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) ("A federal court has an independent obligation to assess its subject-matter jurisdiction, and it will 'raise a lack of subject-matter jurisdiction on its own motion.'"); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Generally, federal courts have jurisdiction over

---

[1] Although the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint).

3

"actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and actions involving citizens of different states, 28 U.S.C. § 1332. Facts supporting jurisdiction must appear in the complaint, Pinkley, 191 F.3d at 399, and the party asserting federal jurisdiction bears the burden of "show[ing] that jurisdiction does, in fact, exist," Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (internal quotation marks omitted).

## BACKGROUND

Construed liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), the Complaint asserts that Guile was constructively discharged from her employment as the Practice's Administrator for Clinical Trials and Research because she reported Mooney's clinical testing errors and verbally and physically threatening conduct. (Docket Entry 2 at 2-8.)[2] Guile maintains that Mooney, Guile's subordinate (id. at 2, 5), failed to follow federal clinical testing requirements (id. at 3-4) and otherwise failed to do her job properly (id. at 5-6). According to Guile, Mooney became physically and verbally threatening when Guile identified these deficiencies. (Id. at 3, 5-6.) Guile asserts that she reported these deficiencies and Mooney's threatening conduct to Kathresal, the Practice's head of research, as well as Walters, the Practice's

---

2  Citations herein to Docket Entry pages utilize the document's internal pagination if unified internal pagination exists. In the absence of such pagination, the Docket Entry page citations utilize the CM/ECF footer's pagination.

4

manager and acting head of human resources, but Walters and Kathresal did not stop Mooney's threats or enforce the Practice's personnel policy, which "states immediate dismissal will result if a threat occurs." (Id. at 2; see also id. at 2-7.) Instead, Guile contends, "I was told [that] I had to 'Get along with [Mooney]' as a condition of my employment" and that "I had to help Janice Mooney do her job." (Id. at 2-3.) Guile states that she attempted to bring her concerns to Cooperberg, the Practice's president, but "[h]e refused to meet with [her]." (Id. at 8.) Thereafter, Guile asserts, Walters and Kathresal forced Guile out of the Practice and gave her job and title to Mooney. (Id. at 2-4, 6.) After Guile's forced exit, Kathresal allegedly "told [the Practice's] pharmaceutical sponsors that 'he had gotten rid of the problem by getting rid of Ms. Guile.'" (Id. at 4.)

Guile contends that "Kathresal retaliated against [her] as a 'whistle-blower', as clinical trials require exact and comprehensive documentation and [Guile] had tried to resolve this issue with him and with Janice Mooney, but he either did not listen or did not care." (Id.) Guile further asserts that this retaliation and the foregoing actions violated her rights under "Title VII of the Civil Rights Act of 1964" ("Title VII"), her employment contract, and various North Carolina laws, including the Retaliatory Employment Discrimination Act. (Id. at 3-4, 6-7.)

5

Guile seeks relief for these violations as well as for "the libel and slander that occurred." (Id. at 9.)

## ANALYSIS

### I. FDA Retaliation Claim

Guile maintains that Kathresal retaliated against her "as a 'whistle-blower'" for reporting Mooney's failure to comply with "Code of Federal Regulations" (the "CFR") clinical investigation requirements. (Id. at 3-4.) The CFR imposes certain obligations regarding "clinical investigations that support applications for research or marketing permits for products regulated by the Food and Drug Administration [(the "FDA")], including . . . drugs for human use." 21 C.F.R. § 50.1; see, e.g., 21 C.F.R. § 312.1 et seq. The FDA's Federal Food, Drug, and Cosmetic Act (the "FD&C") protects certain employees from retaliation for reporting violations of the FD&C and related CFR regulations. See 21 U.S.C. § 399d. Specifically, the FD&C provides that "[n]o entity engaged in the manufacture, processing, packing, transporting, distribution, reception, holding, or importation of food may discharge an employee or otherwise discriminate against an employee" because the employee provided information to the employer relating to a violation of the FD&C "or any order, rule, regulation, standard, or ban under" the FD&C. 21 U.S.C. § 399d(a)(1). Guile does not contend that the Practice engaged in such food-related activities. (See generally Docket Entry 2.)

6

Accordingly, this provision does not apply, and the Court should dismiss Guile's FDA retaliation claim for failure to state a claim.

Alternatively, assuming that the Practice somehow qualifies as a Section 399d "covered entity," see 29 C.F.R. § 1987.102, the claim still cannot proceed. To obtain relief under Section 399d, an individual must first file a complaint with the Secretary of Labor (the "Secretary") regarding the alleged retaliation. 21 U.S.C. § 399d(b)(1); 29 C.F.R. § 1987.103. Thereafter, if the Secretary does not issue a final decision within 210 days of the filing of the complaint, or within 90 days of receiving an initial written determination from the Secretary, the individual may bring an action in federal district court regarding the alleged retaliation. See 21 U.S.C. § 399d(b)(4)(A); 29 C.F.R. § 1987.114(a). In other words, "filing an administrative complaint with[] . . . the Secretary" is a "jurisdictional prerequisite" to bringing a Section 399d retaliation claim in federal court. Marcus v. Barilla Am. NY, Inc., 14 F. Supp. 3d 108, 120 (W.D.N.Y. 2014); see also Gunderson v. BNSF Ry. Co., 29 F. Supp. 3d 1259, 1263 (D. Minn. 2014) (explaining that, under similar Federal Rail Safety Act provision, "the employee acquires the right to file a federal lawsuit on the 211th day" of the administrative proceeding); see also Stone v. Instrumentation Lab. Co., 591 F.3d 239, 245 (4th Cir. 2009) ("The text of the [similar Sarbanes-Oxley whistleblower] statute is clear — if the DOL has not reached a final decision

7

within the time period established by Congress, a complainant has the *statutory right* . . . to 'de novo review' in federal district court."); but see Chase v. Brothers Int'l Food Corp., 3 F. Supp. 3d 49 (W.D.N.Y. 2014) (analyzing Section 399d retaliation claim without reference to prior administrative proceedings). Guile filed a complaint with the Equal Employment Opportunity Commission (see Docket Entry 2-1), but has not alleged that she filed the required retaliation complaint with the Secretary (see Docket Entry 2). See generally Pinkley, 191 F.3d at 399 (observing that jurisdictional facts must appear in the complaint). Accordingly, even assuming Section 399d applies, the Court should dismiss Guile's FDA retaliation claim for lack of jurisdiction. See Davis, 856 F.2d at 650 (explaining that party asserting jurisdiction has to show it exists); Constantine, 411 F.3d at 480; Fed. R. Civ. P. 12(h)(3).

## II. Title VII Claim

Guile maintains that Defendants violated her rights under Title VII. (See Docket Entry 2 at 2-4, 6-8.) Under Title VII, it is unlawful for "an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As a preliminary matter, "[e]mployees are not liable in their individual capacities

8

for Title VII violations." Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 178 (4th Cir. 1998). Accordingly, Guile cannot state a Title VII claim against Individual Defendants. Moreover, Guile has not alleged any facts to support an inference that her "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), prompted Defendants' actions; rather, the Complaint indicates that the trouble arose from Mooney's alleged workplace failures, which resulted in friction and conflict with her boss, Guile. (See, e.g., Docket Entry 2 at 2 (alleging that Guile "was told [she] had to 'Get along with [Mooney]' as a condition of [Guile's] employment"), 3 (describing Mooney complaining about "'being thrown under the bus' by [Guile]" and Kathresal telling Guile "that '[she] had to help Janice Mooney do her job'"), 5 (setting forth allegation that Mooney "[a]ccus[ed Guile] of 'playing games with her', and stat[ed] that 'this had happened to her before on other jobs,'" as well as that Mooney "scream[ed]" at Guile: "'I never make mistakes, this is your fault'" and told Guile, after discussion "about the quality of [Mooney's] work," that "'if I go down, you're going down with me.'") These circumstances do not state a claim under Title VII. See Williams v. Cerberonics, Inc., 871 F.2d 452, 456-57 (4th Cir. 1989) (observing that personality conflicts and resulting personal animosity cannot support a Title VII claim). As such, the Court should dismiss Guile's Title VII claim.

### III. State-law Claims

Guile's remaining claims arise under state law, including the North Carolina Retaliatory Employment Discrimination Act.[3] Guile has not alleged complete diversity from Defendants (see Docket Entry 2 at 1),[4] precluding jurisdiction under 28 U.S.C. § 1332, see Pinkley, 191 F.3d at 399. Accordingly, supplemental jurisdiction under 28 U.S.C. § 1367 provides the only possible basis for subject matter jurisdiction over Guile's state-law claims.

The Court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c). Courts may decline to exercise supplemental jurisdiction when they dismiss all federal claims. See 28 U.S.C. § 1367(c)(3); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."). Relevant

---

[3] Guile's inability to assert an independent FDA retaliation claim does not affect her ability to pursue state-law employment claims. See, e.g., 21 U.S.C. § 399d(c)(1) ("Nothing in this section preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law."); 21 U.S.C. § 399d(c)(2) ("Nothing in this section shall be construed to diminish the rights, privileges, or remedies of any employee under any Federal or State law . . . .").

[4] More specifically, the Complaint lists North Carolina addresses for Guile and the Practice (Docket Entry 2 at 1), a North Carolina corporation, see Durham Nephrology Associates Corporate Name Search, North Carolina Department of the Secretary of State, http://www.secretary.state.nc.us/Search/profcorp/4602182 (last visited Jan. 29, 2016).

considerations in deciding whether to exercise supplemental jurisdiction include convenience and fairness to the parties, comity, the existence of any underlying issues of federal policy, and considerations of judicial economy. See Shanaghan, 58 F.3d at 110. The Court also may consider whether the state-law "claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).

Given these factors, the Court should decline to exercise supplemental jurisdiction over Guile's state-law claims. To begin with, declining supplemental jurisdiction best promotes comity, convenience, judicial economy, and fairness when all federal claims are dismissed early in litigation. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); see also id. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."). Moreover, the question of whether Guile possesses a viable state-law claim for wrongful discharge in contravention of public policy regarding the alleged FDA whistleblower retaliation, see Coman v. Thomas Mfg. Co., Inc., 325 N.C. 172 (1989), represents a novel issue best resolved by North Carolina state courts. Therefore, pursuant to 28 U.S.C. § 1367(c),
11

the Court should decline to exercise supplemental jurisdiction over Guile's state-law claims.

## CONCLUSION

Guile has failed to state a viable federal claim, and, alternatively (as to any FDA-related whistleblower claim), the Court lacks jurisdiction. Finally, the Court should decline to exercise supplemental jurisdiction over Guile's state-law claims.

**IT IS THEREFORE ORDERED** that Guile's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1) is **GRANTED** for the limited purpose of considering this recommendation of dismissal.

**IT IS RECOMMENDED** that the Court dismiss Guile's Title VII and FDA retaliation claims under 28 U.S.C. § 1915(e)(2)(B)(ii) and, in the alternative, dismiss any FDA retaliation claim for want of subject matter jurisdiction.

**IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Guile's state-law claims.

This 29th day of January, 2016.

/s/ L. Patrick Auld
L. Patrick Auld
United States Magistrate Judge